THE MCDANIEL LAW FIRM, PC
54 Main Street
Hackensack, NJ 07601
(201) 845-3232
(201) 845-3777 (fax)
*Attorneys for Plaintiff Century Media Ltd.*

RECEIVED

JUN 2 6 2012

AT 8:30_____M
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CENTURY MEDIA LTD.

          Plaintiff,

      v.

SWARM 36158[1], an unincorporated joint
enterprise, and JOHN DOES 1-3811, such
persons being presently unknown
participants and members of the joint
enterprise,

          Defendants.

Civil Action No.: *12 - 3912*
*(DMC)*

**COMPLAINT WITH JURY DEMAND**

**CENTURY MEDIA LTD.** ("Century Media"), by and through its undersigned

attorneys, respectfully submits its Complaint and alleges against Defendant **SWARM 36158***

and **JOHN DOES 1-3811**, as follows:

### SUMMARY OF ACTION

1.     This civil action seeks injunctive relief and damages for the unlawful distribution

of plaintiff's copyrighted work and removal of copyright management information prior to such

distribution. The claim arises out of the unlawful distribution of the record album "Dystopia" on

the Internet. The Defendants in this matter are the swarm set forth on **Schedule A** hereto

(hereafter the "Swarm" or the "Torrent.") and the individuals who operate the swarm, identified

by IP (Internet Protocol) Address on **Schedule B**, individually and as members and operators of a joint enterprise that has and continues to unlawfully distribute plaintiff's work

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); and 28 U.S.C. 1338(a) (copyright).

3.     Jurisdiction in this State and this Judicial District is proper.  The Swarm is a digital network established and maintained for the purpose of making worldwide distribution of pirated copies of operates within this State and this Judicial District, offering for distribution without authorization pirated copies of Dystopia.   Plaintiff has identified 109 individual connection nodes and file servers within this state engaged in the distribution of pirated of copies of Dystopia. The Swarm thus maintains continuous and systematic contacts with this State and is subject to the general jurisdiction of this Court. Each of the operators of the Swarm is likewise subject to the general jurisdiction of this Court.

4.     The individual Defendants in contravention of United States copyright law joined and maintain the Swarm.   In furtherance of the operation of the Swarm, each individual defendant acts as a server on which illegal copies of the copyrighted work were duplicated and stored, provides the use of communications equipment and Internet service accounts within their custody and control, and has, in fact distributed the copyrighted work using computer equipment, communications equipment and/or Internet service accounts within their custody and control.  At all relevant times, the Swarm and its members offered the work for distribution and duplication from this state and from within this Judicial District.

---

[1]     The alpha-numeric hash file assigned to this unique copy of the copyrighted work is truncated.  See Schedule A for the complete hash.

2

5.     As alleged in more detail below, the Swarm is liable as an unincorporated enterprise that was created to and has continuously offered for distribution pirated copies of the record album Dystopia. Each of the individual defendants, as members and operators of the unincorporated Swarm enterprise, are jointly and severally liable for the acts of the Swarm as well as for their individual acts of copyright infringement.

6.     Venue in this jurisdiction and this Judicial District is proper. See 28 U.S.C. §§ 1391(b), 1400(a). The Swarm has and continues to offer for distribution within this state pirated copies of the plaintiff's work and copies of the work were both distributed to persons within this State and Judicial District and continue to be distributed to persons within this State and Judicial District. The Swarm and each of the individual Defendants may be found within this District in that each defendant is subject to the general jurisdiction of this Court as a result of the continuing systematic operations of the Swarm within this State, each individual defendant is subject to specific personal jurisdiction as a result of the acts taken as operators of the Swarm.

### PARTIES

7.     Plaintiff Century Media is a corporation organized and existing under the laws of the United Kingdom with its principal place of business at 6 Water Lane, Camden, London Nw!8NZ

8.     Century Media is the beneficial owner of the exclusive rights of duplication and distribution at issue in this case

9.     The record album Dystopia that is the subject of this lawsuit is a foreign work and is subject to protection under the Berne Convention and United States copyright law.     In addition, the work is the subject of a valid United States copyright registration. (See Certif. of Copyright, Exh. C.)

10. Swarm 36158 is a joint enterprise, created by the conduct and affirmative agreement of the individual Defendants, and others presently unknown to Century Media, to distribute the copyrighted work Each member of the joint enterprise joined the enterprise through their affirmative conduct and to achieve a common purpose, and, as a result of the technology used to facilitate the Swarm, each member had an equal voice in the management of the enterprise. The identity of Swarm according to the unique alpha-numeric code assigned to the unique copy of the Work is set forth on **Schedule A.**

11. The true names and capacities of the individual Defendants are unknown to Century Media at this time. Each such Defendant is known to Century Media only by the Internet Protocol ("IP") address assigned to that Defendant's Internet service account by his or her Internet Service Provider ("ISP") on a date and time that Defendant was documented unlawfully distributing the work through the Swarm across an Internet account owned by the Defendant. A true and accurate copy of information related to these infringing acts, including the Swarm of which each individual defendant was a member, is attached hereto as **Schedule B.** Century Media believes that information obtained in discovery will lead to the identification of each Defendant's true name.

12. Each individual defendant is subject to the personal jurisdiction of this Court. By affirmative conduct, they joined, maintained and is or were members and operator of the Swarm in that a) a computer within the Defendant's custody and control was used to duplicate and distribute the work, b) an Internet service account within the Defendant's custody and control was used to provide a connection to the Swarm network, and c) the computers, network equipment, and Internet service accounts of the Defendants were utilized to store and transmit copyrighted material in violation of the rights of the copyright holder. The conduct of the

4

Defendants was at a minimum voluntary and, upon information and belief, in most cases was willful.

13.     Upon information and belief, none of the Defendants as participants in their respective Swarms have complied with the conditions precedent to benefit from the safe harbor protections from liability provided under 17 U.S.C. § 512.

14.     Joinder is warranted and appropriate in the instant case as there are multiple facts and legal issues in common between and among all of the defendants.

15.     Each Defendant is known to have offered the work for distribution and, in fact, to have distributed the work from an Internet service account in their custody and control.

16.     Each defendant made a copy of the unlawful work or permitted the making of an unlawful copy of the work on computer equipment within their custody and control.

17.     Each defendant utilizes the same technology to operate the Swarm and distribute the work, and each defendant is jointly and severally liable together with all other defendants who participated in the same Swarm.

18.     The identity and operation of the Swarms and the identity and participation of each individual defendant was uncovered using the same technical methods. Each such IP address is associated with an Internet service account provided by one of the entities listed in **Schedule B**. Each account thus also has been identified as a point of communication on the network that offered pirated copies of the work for distribution to the larger network. Moreover, upon information and belief, each IP address is associated with the individual who controlled the computer and/or Internet service account on which a copy of the work was duplicated and from which it was distributed across the Internet service accounts identified by plaintiff.

19.     Each defendant is jointly and severally liable for the damages caused as a result of the conduct of the Swarm. Each defendant is likewise entitled to contribution from every other member of the Swarm.

20.     Accordingly, plaintiff's right to relief arises out of the same series of transactions or occurrences and questions of law and fact exist that are common to all Defendants.

### THE ILLEGAL REPRODUCTION AND DISTRIBUTION

21.     This case involves yet another iteration of copyrighted works distributed across a digital network. Courts have not hesitated to protect the rights of copyright holders against illegal distributors of pirate copies of copyrighted works through injunctions and damages. Examples of such schemes are the early iterations of Napster (prior to its becoming a legal paid service), Limewire, and illegal "cyber lockers."

22.     The work at issue in this case was unlawfully copied and duplicated among the Defendants by creating a peer-to-peer ("P2P") network, or torrent, for the illegal purpose of distributing the copyrighted work "Dystopia" without the consent of the holder of the copyright.

23.     Rather than using a central server to store, distribute, or identify the location of illegal distribution, the Swarm members used a P2P Bit Torrent Protocol, or a so-called "torrent." In a torrent the peers in the network act as their own central server and communications management system, each storing and distributing the work from individual computers and Internet service accounts, while identifying the other users from which copies may be illegally obtained.

24.     The participants in a torrent are identified through the torrent's tracking technology, in which information about the identity of the Swarm's members is maintained on individual user computers. In addition, the identity of torrents is published on a variety of web

6

sites. Thus, information that facilitates and encourages other acts of infringement also is maintained and distributed from each torrent member's computer and across each torrent members Internet connection.

25. The torrent technology requires the installation of a torrent client (an application loaded onto the user's computer) that breaks the pirated copy into pieces, transmits the file in pieces and manages the parts so transmitted in order that they can be reassembled. For the Swarm to work correctly, the unique file originally uploaded, and all of the subsequent iterations, must be verified and checked to assure that it is identical to the original.

26. Torrents differ from other networks for storage and distribution of copyrighted works in that they permit Internet users, regardless of limited uploading and downloading capabilities on their computers, to participate in transferring large amounts of data across the P2P network.

27. In a torrent, the initial file provider chooses to distribute a file, thus creating the torrent. The initial file is called the "seed." The seed is assigned a unique alpha-numeric file name, known as the hash, and is divided into multiple parts. The hash allows the torrent to manage the distribution of the file and identifies the Swarm, i.e., those participants in the P2P network distributing a unique copy of the work.

28. A second user who identifies the file can then, using the bit torrent client, begin downloading the work in pieces. As the second user receives a portion of the file, it is duplicated on the user's computer and is now offered to any other used connected to the torrent. The file contained on the second user's computer is now also a seed. The process is repeated with each other person who joins in the file sharing, and the network sharing a particular file is known as the "Swarm."

29.     This piecemeal downloading technology system leads to viral spreading of the file across an ever-increasing network on computers and network connection nodes. Users who download the file also offer the file for distribution and distribute the file to others who choose to join the Swarm and copy the file. Each user thus simultaneously duplicates the file and distributes it to others within the torrent swarm. Thus, using torrent technology, the Swarm is a network of users, Internet service accounts, and digital communications equipment and file servers that store and offer for distribution pirated copies of the original file planted by the seed.

30.     Although the torrent does not require subscription to a central server and thus allows anonymous participation, it nonetheless requires the members of the torrent to expose their IP address to the swarm. Through monitoring of the torrent, digital rights enforcement companies identify

- the identify of the copy of the work that is being distributed,

- the IP addresses that provide connection points to the Swarm,

- the fact that the work is, in fact, being offered for distribution from a particular IP address (a portion of the file is downloaded from the user's computer by the enforcement company),

- the size of the file being offered,

- the unique machine code, known as the GUID, created by the user's computer,

- the fact that an unlawful duplicate has been made and is being stored on an individual computer accessing the network through that particular IP address, and

- the content of the file that is being offered from the IP address,

31.     Participation in the torrent requires affirmative conduct on the part of its participants. The individual Defendant must install a torrent client. If the user is the seed, he or

8

she must publish the work to the tracker, which is a web site that collects and publishes information about torrents. The user that seeks to download a copyrighted work must locate the torrent using a search engine or the information stored or distributed by the torrent. The user must then connect to the torrent to begin downloading portions of work from other torrent members. Once the connection is made the torrent utility manages the duplication and distribution of the work. Because the distribution of the torrent is automated, no user has any greater control over its operation than any other.

32.    Torrent users also distribute copyrighted works without copyright management information. Torrent technology breaks works into small parts that are then reassembled on other computers on the torrent network. Thus, in its manner of distribution and duplication, the torrent separates the work's copyright management information, in particular the copyright notices at the beginning and end of the work, from the entirety of the work to enable, facilitate, and conceal the ongoing infringement of the work.

33.    Moreover, the torrent, comprised of its users, the individual computers, and the connections provided through the individual Internet service accounts, provides for the transmission of online digital communications of other user's choosing. Specifically, each Internet service account provides a connection point to the network through which the work in digital form is transmitted. Each computer participating in the torrent transmits and receives digital information and, in the process, duplicates and distributes digital information that is transmitted across the connection point onto the network.

## DIGITAL RIGHTS ENFORCEMENT

34.    Although the operators of a Swarm are anonymous, they are not undetectable. Digital rights enforcement companies are able to monitor many torrents and the actions of the

participants. Torrent monitoring companies use specific protocols for reliability and quality of the evidence that they collect. The information collected to prosecute this action conformed in all material aspects with the standards promulgated by the Association of America (MPAA) and the Recording Industry Association (RIA) protocols for reliable identification of on-line piracy.

35.     Torrent monitoring begins with the identification of the unique files that are being distributed using torrent technology. Using web-crawling technology, the digital rights enforcement company monitors the Internet for the appearance of new pirated copies (and thus the creation of new Swarms.) Each unique copy of the pirated work, determined by the hash assigned to the file is then downloaded in its entirety and manually inspected to assure that it is, in fact, an unauthorized copy of the work under surveillance.

36.     The Swarms distributing the individual files are then placed under surveillance. As distributors of the work are discovered, the IP address, date and time are recorded, along with the hash file and the GUID (a unique alpha-numeric number that identifies the specific computer from which a work was distributed utilizing such information as the IP address, software client and network card code.) In addition, a portion of the file being distributed is downloaded to verify the fact that a pirate copy is stored on the attached computer and that the Swarm member is, in fact, illegally distributing the work.

37.     ISPs meanwhile maintain service logs from which, using the IP address, date and time of connection, the owner of the Internet service account can be determined.

## COUNT I
## COPYRIGHT INFRINGEMENT

38.     Century Media incorporates each and every allegation contained in paragraphs 1 – 38 in their entirety as if set forth at length herein.

10

39.     Century Media is the owner of the exclusive rights of distribution of the work that is the subject of this action. Century Media's exclusive right of distribution has been infringed by the unlawful joint enterprise identified herein as Swarm 36158 in which a torrent was created and maintained to unlawfully distribute the copyrighted work.

40.     Each Defendant, without Century Media's consent, has by voluntary act and as members and operations of Swarm 36158, distributed the work Dystopia from computers and network equipment within their custody and control.

41.     Each Defendant by voluntary act has distributed the work to the network through Internet service accounts within their custody and control. Each defendant using its Internet service accounts and communications acted as a network service provider and distributed infringing material without conforming to the requirements necessary to be afforded safe harbor from liability under 17 U.S.C. § 512.

42.     **Schedule A** identifies the Swarm that operated as an unincorporated enterprise to distribute the work on a network of file servers and Internet accounts using the torrent technology.

43.     **Schedule B** identifies on a Defendant-by-Defendant basis the IP address, Internet Service Provider, Swarm and the dates and times when the work was distributed without permission of the copyright owner.

44.     The foregoing acts of infringement were willful, intentional, and in disregard of and with indifference to the rights of Century Media.

45.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Century Media irreparable injury for which injunctive relief is afforded under 17 U.S.C. §§ 502 and 503. Accordingly, Century Media is entitled to injunctive

11

relief prohibiting Defendants and those active in concert with them from further infringing Century Media's copyrights through unlawful distribution.

46.     As a result of Defendants' infringement of Century Media's exclusive rights, Century Media is entitled to actual damages to 17 U.S.C. § 504(b) against Defendants for the infringement by unlawful distribution of Defendant's work, Century Media is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

47.     As a result of Defendants' infringement of Century Media's exclusive rights, Century Media is entitled to elect statutory damages pursuant to 17 U.S.C. § 504(c) against Defendants for each infringement by that Defendant occurring after the registration date of Century Media's copyright in the record album Dystopia. Century Media is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II
## SECONDARY LIABILITY FOR CONTRIBUTORY
## AND/OR VICARIOUS COPYRIGHT INFRINGEMENT

48.     Century Media incorporates each and every allegation contained in paragraphs 1-47 as if set forth at length herein.

49.     Each member of the Swarm, with knowledge of the infringing activity of the Swarm, induced, caused, or materially contributed to the infringing activity of the Swarm and the other individual members and operators.

50.     The owners of the Internet accounts referred to in **Schedule B** had the ability to control the conduct of the users accessing the Internet through that account and willfully or recklessly disregarded the copyright infringement that was occurring through the use of the Internet service account. If not directly liable for personally copying the Dystopia, such owners

of the accounts induced, caused, or materially contributed to the infringing conduct of other users in the form of the copying and distribution that occurred through the torrent.

51.     To the extent Defendants did not directly participate in the torrent, they were upon information and belief aware of the infringements taking place by other users, as well as aware of their own involvement in the infringement process, and materially contributed to copyright infringement committed by other users.

52.     The infringement by other Bit Torrent users could not have occurred but for the Defendants' knowing participation in the uploading and downloading of the Dystopia.

53.     As such, each Defendant contributed to the individual acts of infringement of the Dystopia, and is liable for the infringing acts of the persons who used the account to commit acts of infringement.

## COUNT III
## REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

54.     Century Media incorporates each and every allegation contained in paragraphs 1-53 as if set forth at length herein.

55.     The work, as published by the author, contained notices of copyright.

56.     By participating in the torrent, each of the individual Defendants, upon information and belief, knowingly caused the copyrighted work to be distributed without copyright management information for purpose of facilitating the infringement of the work in violation of 17 U.S.C. § 1202.

57.     Each individual defendant is liable under 17 U.S.C. § 1203 for statutory damages in an amount of $2,500 to $25,000, costs, and attorneys fees.  To the extent that any individual

Defendant has previously had a judgment entered against him or her for violation of 17 U.S.C. §§ 1201 or 1202, such Defendant is liable for tripling of the statutory damages award.

## COUNT IV
## CIVIL CONSPIRACY

58.     Baseprotect incorporates each and every allegation contained in paragraphs 1-57 as if set forth at length herein.

59.     Each of the individual Defendants, by joining and maintaining the torrent with purpose of illegally duplicating and distributing the record album Dystopia, participated in a civil conspiracy to commit an unlawful act with the express purpose of causing damage to a third person, causing damages thereby.

60.     Each Defendant knowingly agreed to violate Federal copyright law and committed an affirmative act in furtherance of his or her agreement.

61.     Each of the Defendants is jointly and severally liable for the harm caused by the conspiracy.

**WHEREFORE,** Century Media demands judgment against each Defendant as follows:

A. For a preliminary and permanent injunction against Swarm 36158 (identified on Schedule A) and each its individual members and operators (identified on Schedule B) from directly or indirectly distributing the work (including offering for download by bit torrent or comparable technology;)

B. For a preliminary and permanent injunction that each individual Defendant shall return a digital copy of the work to plaintiff and delete any other copies of the Dystopia from any computer hard drive or server other physical medium, except for copies lawfully purchased;

14

C. Against each of the Defendants, jointly and severally, for all damages resulting from the conduct of the enterprise;

D. Against each of the defendants, jointly and severally, for statutory damages for infringement occurring after the effective registration date of the Dystopia pursuant to 17 U.S.C. § 504 in the amount of $150,000;

E. Against the individual Defendants, for statutory damages for removal of copyright management information pursuant to 17 U.S.C. § 1203;

F. For Century Media's costs in this action;

G. Century Media's reasonable attorneys' fees incurred herein; and

H. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Attorneys for Plaintiff Century Media demand trial by jury as to all issues so triable.

DATED:  June 15, 2012                    THE MCDANIEL LAW FIRM, P.C.

By:  _____

Jay R. McDaniel, Esq. (JRM 9687)
*Attorneys for Century Media Ltd.*

## LOCAL RULE 11.2 CERTIFICATION

I certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

DATED: June 15, 2012                    THE MCDANIEL LAW FIRM, P.C.

By: _____
    Jay R. McDaniel, Esq. (JRM 9687)
    *Attorneys for*
    *Century Media Ltd.*